**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ESTEBAN CARLOS LEON | ) | |
| | ) | |
| v. | ) | C.A. No: 05-332L |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE AND/OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

Now comes the United States of America, by and through its Attorneys, Robert Clark Corrente, United States Attorney, and Luis M. Matos, Assistant U.S. Attorney, and hereby objects to Petitioner's Motion to Vacate, Set Aside and/or Correct Sentence Under 28 U.S.C. § 2255 for reasons stated in the attached Memorandum of Law.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

LUIS M. MATOS
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November, 2005, I caused to be sent regular first class mail, a true copy of the within Government's Objection to Petitioner's Motion to Vacate, Set Aside and/or Correct Sentence Under 28 U.S.C. § 2255 to:

Esteban Carlos Leon
Low Security Correctional Institution Allenwood
P.O. Box 1000
White Deer, PA 17887

K Anderson

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ESTEBAN CARLOS LEON | ) | |
| | ) | |
| v. | ) | C.A. No: 05-332L |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE AND/OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

## I. PROCEDURAL HISTORY

On December 17, 2003, a federal grand jury in the District of Rhode Island returned a two-count indictment against petitioner, Carlos Esteban Leon, and three co-conspirators, Nidio Jiminez, Juna Miranda and Sylvio Payero. The indictment charged that the co-conspirators: (1) conspired to distribute and to possess with intent to distribute, in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); and, (2) attempted to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 2 (Count 2). On April 6, 2004, Leon plead guilty to the Indictment.

The Probation Department concluded that Leon's base offense level was 31, based upon a quantity of cocaine of 30 kilograms and with credit for acceptance of responsibility. Presentence Report ("PSR") at 5. The mandatory statutory minimum sentence for such a quantity was 10 years. Defendant was not eligible for the safety valve, pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The criminal history category was I. PSR at 7. The applicable guideline sentencing range was 121 - 151 months of imprisonment. PSR at 9.

Leon was sentenced by this Court on June 23, 2004. He did not file any objections to the PSR. Sentencing Hearing, June 23, 2004, at 2, Appendix 13. However, he did move for a downward departure on the grounds that there existed aggravating circumstances that took his case out of the guidelines' heartland. Specifically, Leon argued that his family situation and his role in the offense warranted a downward departure. Sentencing Hearing at 2-5, Appendix 13-16. Because of the mandatory minimum of 120 years, the motion would, in essence, only have benefitted Leon with a one month reduction. The United States opposed the motion. Sentencing Hearing at 6-8, Appendix 17-19.

Leon was also provided with the opportunity to allocute. He took no exception to the guideline calculation, but did apologize to the Court. Sentencing Hearing at 8, 9, Appendix 19-20. The Court found that the defendant was "an active and necessary participant in the offense" so that he did not play a minor role. Sentencing Hearing at 9, 10, Appendix 20-21. While stating that it thought an appropriate sentence might be lower than the mandatory minimum, the Court denied defendant's motion for a downward departure, which again would only decrease the sentence by one month because of the mandatory minimum. Sentencing Hearing at 11, Appendix 22. The Court sentenced defendant to a term of imprisonment of 121 months, five years supervised release, during which term of supervised release, defendant is to be deported, and a special assessment of $200. Id.

Leon filed a notice of appeal with the First Circuit. On May 6, 2005, his appeal was dismissed upon a motion for a voluntary dismissal pursuant to Fed. R. App. P. 42(b). Appendix 42. In turn he filed the present motion.

In his motion, Leon claims that his counsel was ineffective because:

(1) counsel did not obtain transcripts of the tape recordings of the undercover meetings which he claims would have allowed him to move to suppress the tapes because defendant and his co-conspirators did not have money to buy 30 kilograms of cocaine;

(2) counsel did not file a brief on appeal challenging the Court's failure, at sentencing, to inquire of defendant whether he had an opportunity to review the PSR with counsel;

(3) counsel induced Leon to enter into a guilty plea that was neither knowing or voluntary;

(4) counsel failed to file a motion for a downward departure pursuant to U.S.S.G. § 5K2 because the amount of cocaine was over represented[1].

## II. STATEMENT OF FACTS

At the hearing upon his change of plea, Leon agreed to the following statement of facts:

On November 2, 2003, two federal law enforcement officers working undercover and a cooperating person met at a restaurant in South Attleboro, Massachusetts with Defendant Esteban Carlos Leon and his co-defendants Juan Miranda, Nidio Alberto Jiminez and Silvio De Jesus Payero.

That meeting took place after co-defendant Miranda had spoken with the cooperating person on the telephone on prior occasions, which conversations included setting up the meeting on November 2nd.

---

[1] Leon's motion focuses on alleged errors of counsel that deprived him of an opportunity to argue that the drug weight was overstated. However, at page 8 of his motion, he also claims that counsel did not "challenge the unconstitutionality of petitioner's prior conviction that deprived him of his safety valve provision." Leon fails to provide any support for the suggestion that his prior conviction was not constitutional. Hence, he has failed to carry his burden upon that issue and it should not be considered by the Court.

On November 2nd, the undercover officers represented themselves to be cocaine distributors, selling cocaine at $20,000 per kilogram with a required down payment of $5,000 per kilogram.

Miranda, Jiminez, Payero and Leon all participated in the conversation, and all were present for the entire conversation. They indicated that they could move 15 kilograms of cocaine per day without any problem and agreed to purchase 30 kilograms of cocaine.

After some additional discussion, the final price was set at $19,000 per kilogram with a down payment of $150,000 for 30 kilograms of cocaine. The conversation was recorded. The meeting was surveilled by other federal agents.

On November 25, 2003, the two undercover officers and the cooperating person met with co-defendants Miranda and Jiminez in Warwick, Rhode Island at a second restaurant. During this meeting, Miranda and Jiminez asked about purchasing an additional 30 kilograms of cocaine for a friend.

Miranda and Jiminez were uncertain whether they could secure a vehicle which would carry 60 kilograms, and they asked whether the transaction could be done off of Route 95 near Exit 20, because they had friends in the area. Both Miranda and Jiminez participated in the conversation. The conversation was recorded. The undercover officers said that the transaction could be done near Exit 20.

. . . [W]hile the meeting was occurring inside the restaurant, a third person, a driver, remained inside a vehicle, that was a white Chrysler sedan bearing a New York registration; and that was, in fact, the vehicle that Miranda and Jiminez used to arrive at the restaurant.

Surveillance agents observed a fourth man walk from the direction of the restaurant and enter that same vehicle. Agents observed the Chrysler leave and then return to the restaurant. The driver and fourth man were later identified as co-defendant Payero and defendant Leon.

On December 13, 2003, the two undercover officers, a third undercover officer, and the cooperating person met at a restaurant in South Attleboro, Massachusetts with defendant Leon, and co-defendant's Payero, Miranda, Jiminez. All four subjects participated in the conversation.

They indicated that they were ready to go forward with the transaction but had a slight problem. Jiminez stated that they were $14,000 short and asked how the shortage would be handled. The undercover officers indicated that they would

think about it overnight and it was agreed that they would meet the next day to carry out the transaction, that being December 14, 2003.

. . . [O]n the 14th , the plan was that Defendant [Leon] along with co-defendant Payero would go to the location to pick up the cocaine, while co-defendants Jiminez and Miranda would remain at another location with the money.

Co-defendant Payero and defendant Leon indicated that loading the cocaine would take some time because of the compartment being used to store the cocaine in the vehicle. The conversation was also recorded.

On December 14, 2003, one of the undercover officers and the Cooperating person went to a hotel in Warwick, Rhode Island. A green Lincoln bearing a New York registration which contained co-defendant Miranda and co-defendant Payero arrived at the hotel and a short time later, the white Chrysler arrived containing defendant Leon and Jiminez.

Jiminez asked the undercover officer if the undercover officer wanted to see the money. Jiminez and defendant Leon opened a hidden compartment inside of the Chrysler. Within the hidden compartment was a black trash bag containing a large quantity of U.S. currency. Leon and Jiminez described how the currency was packaged and both stated that there was $136,000 in the hidden compartment. Leon stated that if all went well, they would invest in an additional two or three hides.

Defendant Leon and co-defendant Payero then followed the undercover officer, in the green Lincoln, to a second location in Warwick, Rhode Island. Miranda and Jiminez remained at the hotel with the white Chrysler and the currency.

At the second location, defendant Leon and co-defendant Payero drove the green Lincoln into the building where they were met by two undercover officers. Once inside the building, defendant Leon and co-defendant Payero jacked up the vehicle and used some tools to open a hidden compartment located in the area of the rear passenger side wheel well of the Lincoln.

Leon and Payero then were shown 50 kilograms of cocaine from which they were to pick 30 kilograms. Leon and Payero examined the cocaine and complained about the quality of the cocaine. At that point, the undercover officers arrested defendant Leon and co-defendant Payero; and, after their arrest, other agents arrested Mr. Jiminez and Mr. Miranda and seized approximately $135, 995 in U.S. currency from the vehicle, that being the white Chrysler.

Plea Hearing, April 6, 2004, at 13-18, Appendix 6-11.

## III. THE LAW GOVERNING THE ENTITLEMENT TO A HEARING

Section 2255 provides that the court should hold a hearing unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. Rule 4 of the rules governing Section 2255 proceedings for the United States District Courts provides in pertinent part that "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified."

The burden is on the movant to prove by a preponderance of the evidence that he is entitled to a hearing. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1998). In considering a motion under Section 2255, the district court should accept the movant's allegations as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than facts." United States v. Mosquera, 845 F.2d 1122, 1124 (1st Cir. 1988).

The First Circuit has stated that no hearing is required where the Section 2255 motion: 1) is inadequate on its face, or 2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974); United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989), cert. denied, 493 U.S. 1078 (1990). Moreover, the First Circuit has also held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988); Panzardi-Alvarez v. United States, 879 F.2d 975, n.8 (1st Cir. 1989). A district judge's personal observation and recollection of the events at trial may supplement the record. Gregory v. United States, 585 F.2d 548, 550 n.1 (1st Cir. 1978); United States v. DiCarlo, 575

F.2d 952, 9540955 (1st Cir. 1978).

In the instant case, no evidentiary hearing is required because all of Leon's claims can be resolved by reference to the record. In addition, this Court is familiar with the case and may rely upon its observations and recollections of the events at trial.

## IV. ARGUMENT

### A. LEON RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail upon an ineffective assistance of counsel claim, Leon has the burden of establishing that: (1) his counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the Petitioner by the Sixth Amendment" and (2) "there is a reasonable probability that, but for [counsel's] unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). Petitioner cannot meet his burden under Strickland.

To meet this burden, Leon must establish that counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994), cert. denied, 115 S.Ct. 517 (1994). In determining whether counsel's performance fell below the relevant benchmark, "[j]udicial scrutiny of counsel's performance must be highly differential", and "every effort [should] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (other citations and internal quotations omitted). See also Argencourt v. United States, 78 F.3d 14 (1st Cir. 1996) (setting out the background and

standards applicable to ineffective assistance of counsel claims in § 2255 motions).

"Even if the defendant proves that counsel's performance was objectively unreasonable the requisite showing of prejudice requires more than postulating that counsel's errors had some conceivable effect on the outcome of the proceedings." Strickland, 466 U.S. at 694; United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993), cert. denied, 114 S.Ct. 1839 (1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. If a claim of ineffective assistance can be disposed of on the ground of lack of prejudice, the court should do so. Perron v. Perrin, 742 F.2d 669, 673 (1st Cir. 1984). Leon's motion presents such a claim.

Leon presents a series of claims that, at their core, argue that he was denied the opportunity to challenge the amount of cocaine upon which his sentence was based. That argument is belied by his plea, the record, and this Court's ruling upon the identical sentencing issue, when it sentenced Leon's co-conspirator, Juan Miranda.

**1. A Motion to Suppress Was Not a Viable Option**

Leon argues that counsel did not obtain the transcripts of the undercover meetings which would help him disprove the quantity to which he plead guilty. The argument is a red herring because although Leon may not have obtained transcripts, he did have access to the tape recordings. The United States met its discovery obligation when it provided defendant with cassettes of the audio recordings of all the undercover meetings on January 5, 2004. Appendix 34-36. Hence, counsel was not ineffective. He obtained the tapes that provided proof of Leon's participation in the 30 kilogram conspiracy.

In addition, Leon argues that he did not have an opportunity to "suppress" the amount. Leon must mean that he did not have an opportunity to challenge the amount. He has not identified any Fourth Amendment challenge to the tape recordings that would have entitled him to move to suppress the evidence – nor would there have been any. Moreover, Fourth Amendment claims may not be raised in a petition under 28 U.S.C. § 2255. See Stone v. Powell, 428 U.S. 465, 494 (1976) (state prisoner may not obtain habeas corpus relief based on a Fourth Amendment claim); id. at 519 n.14 (Brennan, J., noting in dissent that earlier decision allowing such claims under §2255 "obviously does not survive" majority decision); United States v. Johnson, 457 U.S. 537, 562 n.20 (1982) (assuming that Stone holding applies to §2255 petitions); United States v. Cook, 997 F.2d 1312, 1317 (10th Cir. 1993) (expressly holding that Stone applies to §2255 petitions); United States v. Hearst, 638 F.2d 1190, 1196 (9th Cir. 1980) (same), cert. denied, 451 U.S. 938 (1981); Curzi v. United States, 773 F. Supp. 535, 540-41 (E.D.N.Y. 1991) (same), aff'd on other grounds, 973 F.2d 107 (2d Cir. 1992), cert. denied, 507 U.S. 954 (1993).

Although Fourth Amendment claims may not be pursued on collateral attack, following Stone the Supreme Court held that a habeas petitioner may obtain collateral review of a claim that he received ineffective assistance of counsel because his attorney failed to file a motion to suppress evidence seized in violation of the Fourth Amendment. Kimmelman v. Morrison, 477 U.S. 365, 382-83 (1986). Morrison makes clear, however, that such a Sixth Amendment claim is different from the underlying Fourth Amendment claim "both in nature and in the requisite elements of proof." 477 U.S. at 374. While the underlying Fourth Amendment claim "is one element of proof of [a] Sixth Amendment claim, the two claims have separate identities and

reflect different constitutional values." Id. at 375. For this reason, Leon must show more than a valid Fourth Amendment claim; he must also satisfy "the rigorous standard which Strickland erected for ineffective-assistance claims." 477 U.S. at 381; United States v. Caggiano, 899 F.2d 99, 101-04 (1st Cir. 1990) (applying Strickland analysis and holding that defendant suffered no prejudice even assuming his counsel's "performance was deficient" in withdrawing motions to suppress).

The failure to pursue a Fourth Amendment issue amounts to incompetence only when "the Fourth Amendment objection was so obvious or promising that no competent lawyer could have failed to pursue it." Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999), cert. denied, 529 U.S. 1032 (2000). Even if such incompetence is shown, it is "still necessary to show prejudice." Id. Leon cannot establish either element of the test. In this case, a valid motion to suppress was not available, nor has Leon identified any cognizable claim to a Fourth Amendment violation that should have led his attorney to investigate and seek suppression.[2] More significantly, as discussed below, Leon cannot demonstrate prejudice.

### 2. Leon Withdrew His Appeal Before the First Circuit And Cannot Now Revive His Claim That the Court Failed to Inquire Whether He Reviewed the PSR

Leon argues that counsel failed to file an appeal challenging the Court's failure to inquire whether he had reviewed the PSR. The argument is not properly before this Court.

As the record reveals, after filing a notice of appeal, trial counsel sought to withdraw from the appeal. Leon apparently agreed because he withdrew his appeal. Appendix 37-41. Had

[2] None of the co-conspirators moved to suppress the tape recordings.

Leon had a valid appeal, he should have pursued it. If he was not satisfied with counsel, his remedy was to seek substitute counsel. It was not to dismiss the appeal and then file a habeas petition claiming that counsel was ineffective for failing to pursue an appeal.

The issue cannot now be relitigated in this habeas petition. A decision on the merits on direct appeal has a preclusive effect on collateral review. Singleton, 26 F.3d at 240 (1st Cir. 1994)("[i]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255."); Argencourt, 78 F.3d at 16 n.1 (1st Cir. 1996); Cabrera, 972 F.2d at 25 (2nd Cir. 1992); DeRewal, 10 F.3d at 105 n.4 (3d Cir. 1993); and Underwood, 440 F. Supp. at 500 (D.R.I. 1977).

Moreover, Leon cannot show prejudice. Fed. R. Crim. P. 32(i)(1)(A) requires that, at sentencing, the Court verify whether defendant and his counsel have read and discussed the PSR. However, the rule does not require that the Court specifically inquire whether the defendant and counsel have read and discussed the PSR. According to First Circuit precedent, it is enough that the Court determine that the defendant and counsel have had an opportunity to read and discuss the report. United States v. Cruz, 981 F.2d 613, 619 (1st Cir. 1992). A new sentencing hearing is not required as long as it is clear from the record that the defendant and counsel were familiar with the PSR. Id.

The Court noted at the commencement of the sentencing hearing that there were no objections to the PSR. Thereafter, counsel demonstrated that the PSR had been reviewed by making his specific arguments for a downward departure. Sentencing Hearing at 2-5, Appendix 13-16. For instance, in response to a statement from the Court that there were no objections to the PSR, but that there was a motion for a downward departure, counsel stated, "That's correct, your Honor." Sentencing Hearing at 2, 3, Appendix 13-14. In addition, Leon was given the

opportunity to address the Court. Sentencing Hearing at 8, 9, Appendix 19-20. He did not raise any substantive issue with the Court that related in any manner to the drug weight. Instead, he stated, "I realize the magnitude of my mistake ...". Sentencing Hearing at 8, Appendix 19. He mentioned his family circumstances and asked for forgiveness. Id. Hence, even if Leon had pursued his appeal on the issue, it would have been meritless because he was not denied the opportunity to raise the issue at sentencing and because it is clear from the record that the Court could reasonably ascertain that Leon discussed the PSR with counsel.

### 3. Leon's Plea was Knowing and Willing

Leon argues that he was induced into a plea that was neither knowing or willing. He has failed to carry his burden and explain why the plea was not knowing and willing. During the sentencing hearing, Leon stated that he discussed the plea agreement fully with his attorney. Plea Hearing at 8, Appendix 4. He stated that it had been translated word for word and that the plea was his voluntary act. Plea Hearing at 8, 9, Appendix 4-5. And in response to the following question from the Court:

> You are agreeing to plead guilty to these two charges involving 30 kilograms of cocaine in exchange for what the Government has just set forth in the plea agreement; is that right?

Leon answered: "Yes." Plea Hearing at 9, Appendix 5.

After the Assistant U.S. Attorney outlined the facts that the United States would prove at trial, including that the co-conspirators intended to distribute 30 kilograms of cocaine, Leon was asked wether those were the facts in his case. He answered that they were. Plea Hearing at 18, Appendix 3. When asked whether he wanted to add anything to the prosecutors statement of facts, he declined. Plea Hearing at 18, Appendix 11. He therefore, plead guilty to the offenses.

He specifically denied that he had been coerced into pleading guilty. Id.. He has identified no facts that would argue that the plea was involuntary.

### 4. Counsel Was Not Ineffective Because If He Had Filed a Motion for a Downward Departure Upon the Drug Weight, It Would Have Been Meritless.

Defendant argues that counsel failed to file a motion for downward departure pursuant to U.S.S.G. § 5K2 because the amount of cocaine was over represented. This is the heart of Leon's motion – that he did not have an opportunity to challenge the drug quantity. Leon is correct, counsel did not challenge the quantity. That, however, does not demonstrate that counsel was ineffective. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689.

Leon has failed to prove that his trial counsel did not use sound trial strategies in choosing which arguments to raise at the sentencing hearing. Trial counsel did not have many viable options. Leon was facing a mandatory minimum sentence of ten years. Counsel argued for a downward departure based upon Leon's family circumstances and for a minor role adjustment. While not very viable arguments, they were not frivolous. However, counsel had no reason to argue for departure upon the drug weight issue. Leon had admitted to the amount at his plea. In addition, Leon took no issue with the amount when he addressed the Court at his sentencing. Moreover, as described below, there is no prejudice to Leon, because even if counsel had made such a frivolous motion, he would not have prevailed.

### 5. There Is No Reasonable Probability That The Defendant's Sentence Would Have Been Different.

Even if defendant could show that trial counsel did not act reasonably, defendant must show that there is a reasonable probability that the result of the proceeding would have been different. Strickland, 466 U.S. at 694. If defendant had sought a downward departure upon the issue of the drug weight, as did his co-conspirator, Juan Miranda, it would have been denied, as was Miranda's.

By making such a claim, Leon would be ignoring his plea colloquy and the facts of this case by stating that the money delivered, $136,000, should only have purchased 7 kilograms of cocaine, not 30 kilograms. The facts in this case are clear. All the parties understood that $136,000 was down payment for 30 kilograms of cocaine – the balance was due after the co-conspirators sold the cocaine.

The case law established prior to United States v. Booker, 125 S. Ct. 738 (2005), was that this Court has the authority to depart pursuant to Koon v. United States, 518 U.S. 81 (1996), and United States v. Rivera, 994 F.2d 942 (1st Cir. 1993). The sentencing guidelines provide that "the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0. This provision also provides that "an offender characteristic or other circumstance that is . . . 'not ordinarily relevant' in determining whether a sentence should be

outside the applicable guideline range may be relevant to this determination if such characteristic . . . is present to an unusual degree." Id. (emphasis supplied). The Commentary to this guideline concludes by stating that "[i]n the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guidelines is not authorized." See also United States v. Grandmaison, 77 F.3d 555, 559 (1st Cir. 1996) ("Departures are warranted only where a case is atypical or where the facts are significantly outside the norm"). Application note 14 to U.S.S.G. § 2D.1.1, may apply in certain exceptional cases. This is not such a case.

The pertinent facts to which defendant pleaded that establish the parties' understanding of the deal were:

> On November 2, 2003, two federal law enforcement officers working undercover and a cooperating person met at a restaurant in South Attleboro, Massachusetts with Defendant Esteban Carlos Leon and his co-defendants Juan Miranda, Nidio Alberto Jiminez and Silvio De Jesus Payero. That meeting took place after co-defendant Miranda had spoken with the cooperating person on the telephone on prior occasions, which conversations included setting up the meeting on November 2nd. On November 2nd, the undercover officers represented themselves to be cocaine distributors, selling cocaine at $20,000 per kilogram with a required down payment of $5,000 per kilogram. Miranda, Jiminez, Payero and Leon all participated in the conversation, and all were present for the entire conversation. They indicated that they could move 15 kilograms of cocaine per day without any problem and agreed to purchase 30 kilograms of cocaine. After some additional discussion, the final price was set at $19,000 per kilogram with a down payment of $150,000 for 30 kilograms of cocaine.

Plea Hearing at 13, 14 (emphasis added), Appendix 6-7.

In addition, the defendant agreed at the time of his plea. that:

> On November 25, 2003, the two undercover officers and the cooperating person met with co-defendants Miranda and Jiminez in Warwick, Rhode Island at a second restaurant. During this meeting, Miranda and Jiminez asked about purchasing an additional 30 kilograms of cocaine for a friend.
>
> * * * * *
>
> On December 14, 2003, one of the undercover officers and the Cooperating person went to a hotel in Warwick, Rhode Island. A green Lincoln bearing a New York registration which contained co-defendant Miranda and co-defendant Payero arrived at the hotel and a short time later, the white Chrysler arrived containing defendant Leon and Jiminez.
>
> Jiminez asked the undercover officer if the undercover officer wanted to see the money. Jiminez and defendant Leon opened a hidden compartment inside of the Chrysler. Within the hidden compartment was a black trash bag containing a large quantity of U.S. currency. Leon and Jiminez described how the currency was packaged and both stated that there was $136,000 in the hidden compartment. Leon stated that if all went well, they would invest in an additional two or three hides.
>
> Defendant Leon and co-defendant Payero then followed the undercover officer, in the green Lincoln, to a second location in Warwick, Rhode Island. Miranda and Jiminez remained at the hotel with the white Chrysler and the currency.
>
> At the second location, defendant Leon and co-defendant Payero drove the green Lincoln into the building where they were met by two undercover officers . . .
>
> Leon and Payero then were shown 50 kilograms of cocaine from which they were to pick 30 kilograms. Leon and Payero examined the cocaine and complained about the quality of the cocaine. At that point, the undercover officers arrested defendant Leon and co-defendant Payero

Plea Hearing at 14, 17 (emphasis added), Appendix 7, 10.

Leon focuses on the amount of money they brought for a down payment. It is clear from the record that $136,000 was an initial payment for 30 kilograms, not full payment for 7 kilograms. Not only were the co-conspirators interested in purchasing 30 kilograms of cocaine, Leon, along with Payero, was given, and accepted, the specific task of picking the 30 kilograms of cocaine that they wished to purchase. Hence, any motion for downward departure distorts the facts of this case, should not be granted, and was not granted in a related case.

One of defendant's co-conspirator's was Juan Miranda. United States v. Miranda, Cr. No. 03-118-02L. At his sentencing, Mr. Miranda argued for a downward departure upon the same basis (that the drug weight was over represented) that Leon now represents he would have pursued, but for his counsel's ineffectiveness. Miranda Sentencing, February 3, 2005 at 11-17, Appendix 27-33. Mr. Miranda's sentencing was held on February 3, 2005. Upon reviewing a virtually identical set of facts, this Court denied Mr. Miranda's motion. As the Court stated:

> It is absolutely clear that these co-conspirators negotiated to purchase 30 kilograms of cocaine, absolutely no question about it, and that the rate was $19,00 per kilogram[] with a $5,000 deposit per kilogram.
>
> Now, what's really the key factor here to show what the deal was really about, these co-conspirators arrived with $136,000, and that is enough money to buy 27.2 kilograms of cocaine. So that is consistent with the bargain, which was 30 kilograms of cocaine. So I'm satisfied that's what this deal is about, and therefore a downward departure is not warranted under these circumstances.

Miranda Sentencing at 18, Appendix 33.

Accordingly, Leon cannot show prejudice. Even if his counsel had undertaken the actions that Leon claims were overlooked, his argument boils down to a presumption that he

could have obtained a lower sentence because the amount of cocaine was overstated. As this Court held in Miranda, the argument is undermined by the facts of the case. Hence, there is no "reasonable probability that, but for [counsel's] unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694.

Finally, as with the motion for a downward departure that he did make, a challenge to the drug weight would be of no practical significance to Leon. He claims that he only agreed to buy seven kilograms of cocaine. Leon Affidavit, p.2, ¶5. Because he was not eligible for the safety valve, Leon could expect to be sentenced to a mandatory minimum ten (10) year sentence for any amount in excess of five kilograms. 21 U.S.C. § 841(b)(1)(A)(ii). He was sentenced to 121 months. Hence, Leon cannot show prejudice under any scenario. Because, Leon cannot show prejudice, his petition must fail.

## CONCLUSION

For the foregoing reasons, this Court should deny Leon's petition for postconviction relief.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

LUIS M. MATOS
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November, 2005, I caused to be sent regular first class mail, a true copy of the within Memorandum of Law in Support of Government's Objection to Petitioner's Motion to Vacate, Set Aside and/or Correct Sentence Under 28 U.S.C. § 2255 to:

Esteban Carlos Leon
Low Security Correctional Institution Allenwood
P.O. Box 1000
White Deer, PA 17887