# APPENDIX

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA, *

Plaintiff, * C.R. 03-118-02L

VS. *

* February 3, 2005

JUAN A. MIRANDA, *

* 2:00 P.M.

Defendant. *

* Providence, RI

* * * * * * * * * * * * * * * *

BEFORE THE HONORABLE RONALD R. LAGUEUX

SENIOR DISTRICT JUDGE

**(DEFENDANT'S MOTION TO DISCLOSE IDENTITY and LOCATION OF WITNESSES & SENTENCING HEARING)**

APPEARANCES:

FOR THE PLAINTIFF: United States Attorney's Office
By: Luis M. Matos, Esquire
Fleet Center
50 Kennedy Plaza - 8th Floor
Providence, RI 02903

FOR THE DEFENDANT: Federal Defender's Office
BY: Edward C. Roy, Esquire
Department of Justice
10 Weybosset Street
Providence, RI 02903

Court Reporter: Angela M. Reynolds, RPR-FCRR

25

**3 FEBRUARY 2005 - 2:00 P.M.**

THE COURT: Good afternoon everyone. The matter before the Court is criminal case 03-118-L, United States of America versus Juan A. Miranda. The matter was originally scheduled for sentencing on this date, however, defendant has made a motion to disclose the identity and location of witnesses, so I will hear that matter first.

Will the attorneys identify themselves for the record.

MR. MATOS: Luis Matos for the United States, your Honor.

MR. ROY: Good afternoon, your Honor. Edward C. Roy for the defendant.

THE COURT: The record will indicate that the defendant is present at counsel table.

All right, I'll hear you on that motion, Mr. Roy.

MR. ROY: Thank you, your Honor. Your Honor, that motion was originally filed in the wake of the Government's representation to me that they were objecting to Mr. Miranda getting the so-called safety valve provisions of the U.S. Code under the guidelines, and since that time, the Government has indicated to me they do not oppose the defendant receiving the safety

So I think that that statement, again, the Government has impliedly indicated a truthful statement, those two statements together support that Mr. Miranda's role is less culpable than that of the other two. He merely made the introductions, your Honor, and although that certainly makes him culpable in terms of his guilt and his conspiracy, it is less culpable than the other defendants because he had no involvement with the money or the vehicles which are the necessary logistics to make this deal come to fruition. Thank you.

THE COURT: All right, I'll hear from the Government on that point.

MR. MATOS: Your Honor, Mr. Roy did not mention his downward departure regarding the weight of the cocaine, so I presume that that is no longer an issue.

MR. ROY: No, it is. I wanted to give Mr. Matos time to respond to each one in series, your Honor. I want to address the downward departure next.

THE COURT: Well, I want to hear all your contentions first. I'm not going to do it piecemeal.

MR. ROY: We also, your Honor, filed a motion for a downward departure based on the presentence report attributing 30 kilograms of cocaine to Mr. Miranda, and it's my position to the Court that the



27

case I cited in my memorandum *U.S. versus Miguel Colon-Solis* at 354 F.3d 101, controls. That decision, which is approximately a little over a year ago, required that a court before it applies a mandatory minimum in a case, make an individualized finding, and Judge Selya's opinion required, pre*Blakely* and pre*Booker*, that these findings were made by a preponderance. I think that the Court would have to now make a beyond-a-reasonable-doubt-finding, assuming those cases. So it's my argument to the Court that you have to make that kind of attribution to Mr. Miranda, and when you look at that, your Honor, you have to look at the nature of this transaction as being a reverse sting transaction, which makes it different than a buy where someone goes out and just purchases 30 kilograms of cocaine. And the reason I make that statement, your Honor, is this transaction was orchestrated by the Government, not to criticize them, it was given to the defendant as very, very favorable terms. They were allowed to purchase cocaine at 25 percent down despite the fact that they had never done business with these particular people before, and that, I think, is an outlandish discount. And what I did, your Honor, is I looked at and I marked as an exhibit the first transcript of the meeting between the defendants and

the undercover agents and the FBI agents and the informant. And I think there are excerpts out of there that support my contention, and if you'd look, I'd like to read and refer to some of them.

On Page 6, your Honor, of the transcript is an individual by the name of Nidio, who is Nidio Jimenez, co-defendant, he says, quote,

"Nidio: "Do you understand me? Then I told the gentleman here that I can find 100, 100 and a little bit more, and in other words, for the amount that I would be able to get out of it. Whatever I can get out of it, that's what I'm going to get. As I told him, if there are numbers, I will be able to get up to 7."

It's my argument to the Court that what that's referring to is 7 kilograms. He wanted to buy 7 kilograms of cocaine. When you look farther on in the transcript, your Honor, again referring next to Page 12 of the transcript, reference is made to "UCA 3005," who is the undercover FBI agent.

UCA 3005: "Hey, let's suppose this. Let's suppose that you guys take 20 with you, how many days do you need to?

Nidio: Twenty? If you give us 20, we'll bring you, we'll bring you 100, for example, 100 and a bit more."

Again, your Honor, our argument to the Court, that refers to what he said on Page 6, he wanted to buy 7, they're saying we'll give you 20, we'll give you 30, and that, I think, your Honor, takes us into the territory where the guidelines talk about, Comment 14 under Section 2D1.1, where you find yourself in a situation where the amount of cocaine that's proposed is more than the defendants could reasonably purchase.

Page 20 of the transcript, your Honor -- Nidio -- a part of it is inaudible, and Mr. Jimenez says:

"Nidio: No, no," to them. "I used to have a Focus, and I changed it. The car I had -- now we have a car we have to -- ten is what it counts with.

UCA: Ten only?

Nidio: Maybe 15. In other words, it has been just finished. No, no, we really don't know."

To move this along, your Honor, Page 21, the next page, bottom third of the page:

"Nidio: I always -- this is one of the Chrysler, and the other one is a Dodge. In other words, nobody has grabbed one of those cars.

UCA 3004: So what would be the maximum you guys could order?

Nidio: Ah?

UCA 3004: Because we are not accustomed to sell

10 only."

And turning, your Honor, to Page 35 of 50 pages in the transcript, again, UCA 3004:

"UCA 3004: Didn't you say you wanted 30?

Nidio: Uh?

UCA 3004: Didn't you say you wanted 30?"

So it my argument to the Court that the 30 kilograms that my client pleaded to in the indictment is suggested by the Government and is more than these defendants really were capable of handling, your Honor. I think that the transcript bears that out, and I think that the Commentary Note 14 supports that argument, and I would ask the Court to make a two-level downward departure based on that. Thank you.

MR. MATOS: Your Honor, we oppose both of the defendant's requests. In regards to a minor player, I think it's interesting that the defendant is relying on the 302 of Mr. Nidio Jimenez. At Page 6 of that 302 it states, "Jimenez saw all four members of the group as equals with all decisions made by agreement."

It's clear from not only this case but the colloquies regarding the co-defendants in this case that they were all equal, your Honor. It is also clear from Mr. Jimenez's 302 that of all four individuals, the individuals that played key roles were Mr. Jimenez

and Mr. Miranda, and the key roles were Mr. Jimenez obtained the money, Mr. Miranda obtained the contact. He's the one that brought the parties together and that was a very important facet of this, your Honor.

So based on the plea colloquy in this case, your Honor, plus the 302s that have been attached to the parties' pleadings, it is clear that all the defendants had equal roles in this case, your Honor. There's not only that, based on the case law that is cited in my motion, your Honor, and especially in Merlina Morero, that the case law is whether an individual has to be less culpable or substantially less culpable than the average participant. There's nothing in this case that indicates that the defendant is substantially less culpable than any of the other four. So the adjustment is not required, your Honor.

In regards to the weight, initially the motion by the defendant was that it should only be five kilograms, now we have a slightly different argument, your Honor. But I would say the following: In Mr. Miranda's 302, he agreed -- not only did he agree in his plea colloquy that the terms of the deal were $19,000 per kilogram for 30 kilograms, and that the initial delivery was a down payment, it's also noteworthy, your Honor, that -- and as is reflected in

the transcript that I submitted in response to the defendant's identity motion, that there was a meeting, -- the initial meeting the parties discussed 30 kilograms to be sold, and then there was a second meeting, your Honor, on November 25, and during that meeting Miranda and Jimenez asked about purchasing an additional 30 kilograms of cocaine for a friend. So the defendant is arguing that they were somehow seduced into this concept of buying 30 kilograms; they come up a second time saying we want to buy an additional 30, so we want 60.

So it's clear from the colloquy and from what's been submitted to the Court that the terms of the deal that everyone agreed to and that the parties were interested in buying was 30 kilograms of cocaine. And his argument is basically contradicted by his own plea colloquy.

THE COURT: I'll take up the defendant's two objections to the presentence report.

As I've indicated, the Government now agrees that the safety valve applies, so that provides for two points downward. The defendant also requests two more points downward because he claims to be a minor participant. The facts show in this case that he was their initial and primary contact with the cooperating

witness. So he was a key player in this in that he brought the parties together for this purchase, and he was also equally involved in discussing the terms of the deal and he also oversaw payment for the drugs after delivery.

So he was a vital cog in this conspiracy, and I would characterize him as either a co-leader or an assistant leader in this drug conspiracy, and, therefore, he was not a minor participant by any stretch of the imagination. So that request is denied.

The defendant also claims that there should be a downward departure because really what was involved is less than 30 kilograms of cocaine. It is absolutely clear that these co-conspirators negotiated to purchase 30 kilograms of cocaine, absolutely no question about it, and the rate was $19,000 per kilograms with a $5,000 deposit per kilogram.

Now, what's really the key factor here to show what the deal was really about, these co-conspirators arrived with $136,000, and that is enough money to buy 27.2 kilograms of cocaine. So that is consistent with the bargain, which was 30 kilograms of cocaine. So I'm satisfied that's what this deal is about, and therefore a downward departure is not warranted under these circumstances.



33.1

**U.S. Department of Justice**

*United States Attorney*
*District of Rhode Island*

Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

(401) 528-5477
FAX (401) 528-5474

January 5, 2004

Van L. Hayhow, Esq.
923 Washington Street
South Attleboro, MA 02703

Re: U.S. v. Esteban Carlos Leon
Cr No. 03- 118-03L

Dear Attorney Hayhow:

This letter is to provide you with the discovery required under Rule 16 of the Federal Rules of Criminal Procedure and the Court's standard pretrial discovery order. In addition, this letter contains the government's requests for discovery under Rule 16. Enclosed are documents, Bates Nos. 1 through 107. I also expect to forward an additional document (a 302) summarizing certain events on the day of the arrest once the 302 is finalized later this week.

1. Discovery Under Rule 16(a)(1)

A. The Government is not aware of any statements given by the defendant in response to interrogation by a person or persons known by him to be law enforcement officers. The defendant did not testify before the grand jury which returned the indictment.

B. A copy of the criminal record of the defendant known to the government is enclosed.

C. The tangible evidence in the government's possession which is subject to the provisions of Rule 16(a)(1)(C) includes the following:

- video surveillance
- enclosed photographs
- cocaine
- list of payment money
- tape recordings

If you wish to inspect and copy the government's evidence, please let us know and we

will make the necessary arrangements. In addition, please be aware that the government may also use diagrams, charts, transcripts, or photographs to facilitate presentation of some of the expected testimony. These items, however, with the exception of the photographs included in this production, have not yet been prepared and are therefore presently unavailable for inspection.

D. Other than the information provided in this letter and its attachments, the government has no material or information, within the meaning of Giles v. Maryland, 386 U.S. 66 (1967), Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), which tends to negate the guilt of the accused or to reduce his punishment for the offense charged. The government is aware of its continuing duty to disclose exculpatory evidence.

E. The government did intercept oral communications to which the defendant was a party. Enclosed are cassettes and CD's of monitored conversations of your client. An index of all the audio tapes and CD's that are being produced is enclosed. Please note that there are also video cassettes that are identified in an index that is also attached. The video cassettes are not enclosed but are available for your review. The audio of the events represented in the videos, however, is being produced.

F. At this stage the government does not intend to call the cooperating person as a witness at trial. Nonetheless, a redacted copy of the cooperating person's criminal record is enclosed at Bates Nos. 66-69. The cooperating person has received approximately $303,000 in compensation in relation to matters upon which he has assisted the government over a 12 year period. In addition, he has received approximately $2,500 to date in this case.

2 Government's Discovery Requests

A. The government asks that it be permitted to inspect and copy or photograph all tangible evidence which counsel intends to introduce on behalf of the defendant during the presentation of your case-in-chief at trial.

B. The government asks that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case which counsel intends to introduce on behalf of the defendant in your case-in-chief at trial, or which were prepared by a witness counsel intends to present at trial where the results or reports relate to that witness' testimony.

C. The government requests that the defendant disclose summaries of testimony by any expert witnesses the defendant expects to call on his behalf at trial.

D. The government requests that the defendant provide the notice required under Rule 12.2 of the Federal Rules of Criminal Procedure in the event the defendant intends to offer a defense of insanity or expert testimony concerning his mental condition.

E. The government requests that, pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure, the defendant provide the government with copies of any and all statements made by witnesses for the defense.

F. The government requests that the defendant provide the notice required under Rule 12.1 of the Federal Rules of Criminal Procedure in the event the defendant intends to offer a defense of alibi.

C. Plea Proceedings

We are willing to enter a plea agreement with your client under the following terms. Your client would plead guilty to the Indictment. We would agree not to object to a downward adjustment for acceptance of responsibility and we would also agree to recommend a sentence at the low end of the guideline range.

If, after reviewing the agreement with your client, he decides to enter into the agreement kindly have the agreement fully executed and returned to me. We will then file the original with the Court and return a copy to you for your files.

The agreement must be fully executed before the date of the pre-trial conference in this matter, January 22, 2004, in order for your client to receive the full benefit of the agreement. After that date, the you may presume that the government will commence preparing for trial, including the transcription and translation of audio tapes and CD's that the government determines it will introduce at trial. After January 22, 2004, we will not be in a position to recommend a three point reduction in the offense level for acceptance of responsibility, if your client were to plead guilty. Accordingly, please have the agreement executed and returned to me on or before that date.

If there are additional matters that you would like the government to consider prior to entering into the plea or if you have any questions about discovery or the plea offer, please call me at 528-5281.

Sincerely,

CRAIG N. MOORE
Acting United States Attorney

Luis M. Matos
Assistant U.S. Attorney

36

**VAN L. HAYHOW**
Attorney at Law
923 Washington Street
South Attleboro, Massachusetts 02703
Telephone number: (508) 399-9200
Fax number: (508) 399-9922

RECEIVED
AUG - 4 2004
U.S. ATTORNEY
DISTRICT OF RI

8/2/2004

Chief Deputy Clerk
U. S. Court of Appeals
1606 John W, McCormack
Post Office and Courthouse
Boston, MA 02109

***Re:*** ***United States v. Leon***
***Docket*** # 041-1919

Dear Sir/Madam:

Enclosed please find an original and three (3) copies of a Motion to Withdraw in the above-captioned matter

Please file and docket.

Thank you for your attention to this matter and please feel free to contact this office with any questions.

Very truly yours,

Van L. Hayhow, Esquire

**UNITED STATES COURT OF APPEALS**

**FOR THE FIRST CIRCUIT**

No. 041-1919

UNITED STATES

Appellee

V.

ESTEBAN CARLOS LEON,

Defendant - Appellant

MOTION OF DEFENDANT'S COUNSEL TO WITHDRAW

Now comes the Van L. Hayhow, Esquire, attorney for the defendant/appellant, Esteban Carlos Leon, in the District Court and moves this Honorable Court to withdraw his appearance as attorney for the defendant in this matter. In support of this motion, the undersigned states as follows:

1. The undersigned was court appointed to represent Mr. Leon in the District Court for the District of Rhode Island. The matter resolved itself on a plea pursuant to a written plea agreement.

2. In the District Court, the undersigned filed a motion for a downward departure on behalf of the defendant, which motion was denied. Counsel recommended to the

defendant after the sentencing hearing that the defendant not appeal since the trial court, Judge Lagueux presiding, had sentenced the defendant to the bottom of the guidelines as calculated in the pre sentence report. Counsel had agreed with the computation of the guideline calculation contained in the pre sentence report and no objection to that calculation had been filed.

3. Nevertheless, the defendant feels that there are issues that need to be reviewed on appeal and filed a pro se appeal. The undersigned feels that given his past advice, the defendant would be better served by having new counsel take a fresh look at the matter so that the defendant can be best represented on appeal.

For the foregoing reasons, the undersigned respectfully requests that his motion to withdraw as attorney for the defendant be allowed and that new counsel be appointed for him.

Van L. Hayhow, Esquire
923 Washington Street
South Attleboro, MA 02703
508-399-9200
Date: 8/2/2004

CERTIFICATION

I, the undersigned, do hereby certify that I sent a true copy of this document by first class mail, postage prepaid on this 7 day August 2004 to:

Donald Lockhart, Esquire
U. S. Attorney's Office
Fleet Center - 8th Floor
Providence, R. I. 02903

ESTEBAN CARLOS LEON
REG.NO.05390-070
L.S.C.I. ALLENWOOD
P.O. BOX 1000
WHITE DEER, PA 17887-1000

MP

CLERK'S OFFICE U.S. COURT OF APPEALS FOR THE FIRST CIRCUIT
2005 APR 15 P 1:59

April 12, 2005

Office of the Clerk
United States Court of Appeals
For the First District
John Joseph H. Moakley
U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

RE: U.S. v. Esteban Carlos Leon - Appeal No. 04-1919

Dear Clerk,

I recently received a letter from the court, where the court advised me of my counsel's intentions to withdraw from my case. I respectfully contend, that I have not had any contact with my counsel, nor was I awared of his intentions. I can not conceive the idea of keeping this particular counsel through my appeal process counsel has not made an attempt to ask me about what issues I think I need to appeal.

It is the usual practice in this circuit to require that ineffective assistance of counsel issues be reserved for collateral attack. See United States v. Gonzalez Airmont, 268 F.3d 8 at 13 (1st Cir. 2001); United States v. Mala, 7 F. 3d 1058 1063 (1st. Cir. 1993) Citing cases.

Therefore, since I will be pursuing an ineffective assistance of counsel, claimed because of counsel's failure to file the appeal, on the issues I would like to request, I am formally requesting that the appeal be withdrawn from the docket at the earliest convenience to the Court.

Please forward me confirmation, when the appeal has been withdrawn so that I can pursue further legal remedy via Title 28 U.S.C.§2255.

Please accept my most humble thanks for your time and attention in the above matters.

Respectfully Submitted,

Date: April 12, 2005.

ESTEBAN CARLOS LEON

DOCKETED

41

03-00118
USDC RI
Judge R. Lagueux

# MANDATE

# United States Court of Appeals
## For the First Circuit

No.04-1919

UNITED STATES,

Appellee,

v.

ESTEBAN CARLOS LEON,

Defendant - Appellant.

RECEIVED
MAY - 9 2005
U.S. ATTORNEY
DISTRICT OF R.I.

**JUDGMENT**

**Entered: May 6, 2005**

Upon consideration of appellant's unopposed motion,

It is hereby ordered that this appeal be voluntarily dismissed pursuant to Fed. R. App. P. 42(b).

Mandate to issue forthwith.

**Certified and Issued as Mandate under Fed. R. App. P. 41.**

**Richard Cushing Donovan, Clerk**

**Deputy Clerk**

**Date:** 5/6/05

By the Court:
Richard Cushing Donovan, Clerk

By: LYNNE ALIX MORRISON
Appeals Attorney

[cc: Van L. Hayhow, Esq., Luis M. Matos, AUSA, Gerard B. Sullivan, AUSA, Donald Lockhart, AUSA]

✓ L 10NS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | C.R. NO. 03-118-3L |
| VS. | APRIL 6, 2004<br>3:00 P.M. |
| ESTEBAN CARLOS LEON | PROVIDENCE, RI |

BEFORE THE HONORABLE MARY M. LISI,

DISTRICT JUDGE

(Change of Plea)

APPEARANCES:

| | |
|---|---|
| FOR THE GOVERNMENT: | STEPHEN DAMBRUCH, ESQ.<br>U.S. Attorney's Office<br>50 Kennedy Plaza<br>Providence, RI 02903 |
| FOR THE DEFENDANT: | VAN L. HAYHOW, ESQ.<br>922 Washington Street, 2nd Floor<br>South Attleboro, MA 02703 |
| Court Reporter: | Karen M. Zinni, RPR-RMR-CRR<br>One Exchange Terrace<br>Providence, RI 02903 |
| Interpreter: | Ana-Cecilia Rosado |

Proceeding reported and produced by computer-aided stenography

6 APRIL 2004 -- 3:00 P.M.

THE COURT: Good afternoon, everyone. The matter before the Court is Criminal Case 03-118L, United States of America versus Esteban Carlos Leon. The matter is here for change of plea.

Will the attorneys identify themselves for the record, please.

MR. DAMBRUCH: Stephen Dambruch, Assistant United States Attorney, for the Government.

MR. HAYHOW: Van Hayhow, your Honor, for the Defendant.

THE COURT: The record will indicate the Defendant is at counsel table and being assisted by our court interpreter, Ana-Cecilia Rosado. Mr. Hayhow, is the Defendant ready to change his plea?

MR. HAYHOW: Yes, your Honor.

THE COURT: All right. The clerk will administer the oath to him through the interpreter. He will stand at counsel table, and he can remain there.

(Defendant sworn)

THE CLERK: Would you state your name for the record, spelling your last name, please.

THE DEFENDANT: Esteban Carlos Leon.

THE COURT: Spell his last name, please.

THE DEFENDANT: L-E-O-N.

THE COURT: Now, Mr. Leon, do you understand now you're under oath and you'll have to make true answer to any questions I ask of you?

THE DEFENDANT: Yes.

THE COURT: And if you give any false answers or make any false statements, you can be prosecuted for perjury. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: How old are you?

THE DEFENDANT: Twenty-eight.

THE COURT: And how far did you go in school?

THE DEFENDANT: Three or four semesters at the university.

THE COURT: And where was that?

THE DEFENDANT: In the Dominican Republic.

THE COURT: Are you an American citizen?

THE DEFENDANT: No.

THE COURT: And did you go to any school here in the United States?

THE DEFENDANT: Yes.

THE COURT: And what kind of schooling did you get here?

THE DEFENDANT: An English course. It was about three months.

THE COURT: What type of work have you been

maximum statutory penalties are.

MR. DAMBRUCH: Yes, sir. The maximum statutory penalties for each of the two counts would be as follows, your Honor: A mandatory minimum 10-year to life imprisonment term, a fine of up to $4 million, a lifetime term of supervised release and a mandatory special assessment of $100; and that's the same penalty for each of the two counts.

THE COURT: Did you hear all of that, Mr. Leon?

THE DEFENDANT: Yes.

THE COURT: And is that your understanding of the agreement that you have with the Government?

THE DEFENDANT: Yes.

THE COURT: I noticed that you signed this on March 30th, 2004; is that correct?

THE DEFENDANT: Yes.

THE COURT: Now, before signing it, did you discuss it fully with your attorney?

THE DEFENDANT: Yes.

THE COURT: And did you have it translated word for word for you?

THE DEFENDANT: Yes.

THE COURT: And it's your voluntary act to agree to this in exchange for the promises that the Government has placed in this agreement; is that

correct?

THE DEFENDANT: Yes.

THE COURT: You are agreeing to plead guilty to these two charges involving 30 kilograms of cocaine in exchange for what the Government has just set forth in the plea agreement; is that right?

THE DEFENDANT: Yes.

THE COURT: And you understand that the Court will make a determination of what sentence to impose in this case and is not bound by the recommendation of the Government?

THE DEFENDANT: Yes.

THE COURT: Now, have you discussed the guidelines with your attorney and the mandatory minimum?

THE DEFENDANT: Yes.

THE COURT: Have you discussed the safety valve with your attorney, whether the safety valve might apply in this case to alleviate the application of the mandatory minimum?

THE DEFENDANT: Yes.

THE COURT: Now, you understand that whatever you've discussed about what sentence you think you're going to get, it's only an estimate at this point, and no one in the room right now knows where the guidelines

by entering a plea of guilty, there will be no trial and you will have given up all those rights that are incidental to a trial?

THE DEFENDANT: Yes.

THE COURT: Now, I'd like the prosecutor to set forth what the Government would prove in this case if it went to trial.

MR. DAMBRUCH: Yes, your Honor.

THE COURT: Listen carefully to this, Mr. Leon, because then I will ask you whether these are the facts in your case. Mr. Dambruch.

MR. DAMBRUCH: Yes, your Honor. If this matter had proceeded to trial, the Government was prepared to prove that the Defendant entered into an agreement with at least one other person to distribute and possess with intent to distribute in excess of 5 kilograms of a mixture and substance containing a detectable amount of cocaine and also that he did attempt to possess with the intent to distribute in excess of 5 kilograms of cocaine.

We would have proven those elements through the introduction of evidence showing the following: On November 2 of 2003, two federal law enforcement officers working undercover and a cooperating person met at a restaurant in South Attleboro, Massachusetts,

with Defendant, Esteban Carlos Leon, and his Co-Defendants, Juan Miranda, Nidio Alberto Jiminez and Silvio DeJesus Payero.

That meeting took place after Co-Defendant Miranda had spoken with the cooperating person on the telephone. Those conversations included a conversation setting up the meeting for November 2nd.

On November 2nd, the undercover officers represented themselves to be cocaine distributors, selling cocaine at $20,000 per kilogram with a required down payment of $5,000 per kilogram.

Miranda, Jiminez, Payero and Leon all participated in the conversation, and they all were present for the entire conversation. They indicated that they could move 15 kilograms of cocaine per day without any problem and agreed to purchase 30 kilograms of cocaine.

After some additional discussion, the final price was set at $19,000 per kilogram with a down payment of $150,000 for 30 kilograms of cocaine. That conversation was recorded, and the meeting was surveilled by other federal agents.

On November 25, 2003, the two undercover officers and the cooperating person met with Co-Defendants Miranda and Jiminez in Warwick, Rhode

Island, at a second restaurant. During this meeting, Miranda and Jiminez asked about purchasing an additional 30 kilograms of cocaine for a friend.

Miranda and Jiminez were uncertain whether they could secure a vehicle which would carry 60 kilograms, and they asked whether the transaction could be done off of Route 95 near Exit 20 because they had friends in the area. Both Miranda and Jiminez participated in the conversation, which was recorded. The undercover officers said that the transaction could be done near Exit 20.

Now, while the meeting was occurring inside the restaurant, a third person, a driver, remained inside a vehicle that was a white Chrysler sedan bearing a New York registration; and that was, in fact, the vehicle that Mr. Miranda and Mr. Jiminez had arrived in at the restaurant.

Surveillance agents also observed a fourth man walk from the direction of the restaurant and enter that same vehicle. Agents observed the Chrysler leave and then return to the restaurant. The driver and the fourth man were identified as Co-Defendant Payero and Defendant Leon.

On December 13 of 2003, the two undercover officers, a third undercover officer and the

cooperating person met at a restaurant in South Attleboro, Massachusetts, with Defendant Leon and Co-Defendants Payero, Miranda and Jiminez. All four subjects participated in that conversation.

They indicated that they were ready to go forward with the transaction but had a slight problem. Jiminez stated that they were $14,000 short and asked how that shortage would be handled. The undercover officers indicated that they would think about it overnight, and it was agreed that they would meet the next day to complete the transaction, that being December 14 of 2003.

Now, on the 14th, the plan was that Defendant Leon, along with Co-Defendant Payero, would go to the location to pick up the cocaine while Co-Defendants Jiminez and Miranda would remain at another location with the money.

Co-Defendant Payero and Defendant Leon indicated that loading the cocaine would take some time because of the compartment being used to store the cocaine in the vehicle. That conversation was also recorded.

On December 14th of 2003, one of the undercover officers and the cooperating person went to a hotel in Warwick, Rhode Island. A green Lincoln bearing a New York registration which contained Co-Defendant

Miranda and Co-Defendant Payero arrived at the hotel, and a short time later the white Chrysler arrived containing Defendant Leon and Co-Defendant Jiminez.

Jiminez asked the undercover officer if the undercover officer wanted to see the money. Jiminez and Defendant Leon opened a hidden compartment inside of the Chrysler. Within that hidden compartment was a black trash bag containing a large quantity of U.S. currency. Leon and Jiminez described how the currency was packaged, and both stated that there was $136,000 in the hidden compartment. Leon stated that if all went well, they would invest in an additional two or three hides.

Defendant Leon and Co-Defendant Payero then followed the undercover officer in the green Lincoln to a second location in Warwick, Rhode Island. Miranda and Jiminez remained at the hotel with the white Chrysler and the currency.

At the second location, Defendant Leon and Co-Defendant Payero drove the green Lincoln into the building where they were met by two undercover officers. Once inside the building, Defendant Leon and Co-Defendant Payero jacked up the vehicle and used some tools to open a hidden compartment located in the area of the rear passenger side wheel well of the Lincoln.

Leon and Payero then were shown 50 kilograms of cocaine from which they were to pick 30. Leon and Payero examined the cocaine and complained about the quality of the cocaine. At that point the undercover agents arrested Defendant Leon and Co-Defendant Payero; and after their arrest, other agents arrested Mr. Jiminez and Mr. Miranda and seized approximately $135,995 in U.S. currency from the vehicle, that being the white Chrysler. Thank you.

THE COURT: Did you hear all of that, Mr. Leon?

THE DEFENDANT: Yes.

THE COURT: And are those the facts in your case?

THE DEFENDANT: Yes.

THE COURT: Is there anything you want to add or subtract from what the prosecutor just said?

THE DEFENDANT: No.

THE COURT: Now, I just want to make certain that this plea agreement that you entered into with the Government, have there been any other promises or assurances made to you other than that plea agreement to induce you to plead guilty in this case?

THE DEFENDANT: No.

THE COURT: Anyone exercise any coercion or duress upon you to force you to plead guilty in this



11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COPY

| | |
|---|---|
| USA | CRIMINAL ACTION NO. 03-118-03L |
| VS. | JUNE 23, 2004 |
| ESTEBAN CARLOS LEON | PROVIDENCE, RI |

HEARD BEFORE THE HONORABLE RONALD R. LAGUEUX

DISTRICT JUDGE

(SENTENCING)

<u>APPEARANCES</u>:

FOR THE GOVERNMENT: LEE VILKER, ESQ.
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT: VAN L. HAYHOW, ESQ.
923 Washington Street
2nd Floor
South Attleboro, MA 02703

Court Reporter: Anne M. Clayton, RPR
One Exchange Terrace
Providence, RI 02903

THE COURT: The matter before the Court is Criminal Case 2003-118L, United States of America versus Esteban Carlos Leon. The matter is here for sentencing.

Will the attorneys identify themselves for the record, please.

MR. VILKER: Good morning, your Honor. Lee Vilker, Assistant U.S. Attorney, for the Government.

MR. HAYHOW: Van Hayhow, your Honor, for the Defendant, Mr. Leon.

THE COURT: The record will indicate the Defendant is present at counsel table and being assisted by our Court interpreter, Ana-Cecilia Rosado.

There's no objection to the presentence report except that there is a motion for downward departure by the Defendant. So I'll hear from Defendant first on that motion.

MR. HAYHOW: That's correct, your Honor. My client is before the Court with one prior offense on his record. In that matter, he was placed on probation, straight probation with no time to be served in New York, and then this offense occurred during the time he was on

probation. Because of that fact, he was not eligible for what is commonly referred to as the safety valve.

Nevertheless, your Honor, there are certain circumstances in his background and in his case that my client wanted me to bring to the Court's attention for purposes of sentencing, which resulted in this motion.

THE COURT: How can I depart? I can't depart below the mandatory minimum?

MR. HAYHOW: Yes, your Honor. And the guideline range is essentially at that. So I guess in one sense, your Honor, I would ask the Court take the motion in consideration in terms of sentencing within the guideline range since, I think the most you could depart on this is one month, because I think the bottom of the guideline range is 121.

THE COURT: That's right. The bottom of guideline range is 121 months. And there's a mandatory minimum is 120 months. So the most he can gain is one month by virtue of your motion.

MR. HAYHOW: I agree with that, your Honor.

In this case, your Honor, my client has

had a very difficult background in the Dominican Republic, which I think is made very clear in the presentence report put together by Mr. Jenkins and in the letters that he sent to the Court, and then the additional letter he sent to Mr. Jenkins that's attached as an exhibit.

Because of these factors, he feels a very strong bond of loyalty to these people, and he has been attempting to support them and help them out as best he can.

He also does have a wife and children. In fact, your Honor, his wife is seated in the first row of the courtroom. She came up from New York to be with him today and to show her support for him.

He's one of the few clients I've ever had, I think, your Honor, that has had what in his mind were legitimate financial strains on him which overrode his more normal judgment I would think and led him into these two different transactions, the one in New York and then the one here today.

So in that sense, your Honor, I think his family responsibilities are beyond the normal family responsibilities of a defendant in the court. For example, most of the or a lot of the

clients that I represent in this Court don't have families and don't have family responsibilities as such. They're single. They've never been married and so forth.

In addition, your Honor, there's the issue of how this case came about. My client was recruited into the case. He's not the instigator or planner of this transaction. There were at least two confidential informants that were working for the prosecution that helped put this thing together, and my client was just brought into it.

Now, he did it voluntarily, and he committed the crime, and he's pled guilty, and he's here. And the amounts in this case are pretty high. But I would ask the Court to take the factors that he was not the person who instigated this crime. He was brought into the crime after it was instigated. He's not the one who raised the money. He came along for the ride to help with the deliveries and so forth.

I would ask the Court to take those into consideration and sentence him to the bottom of the guidelines.

THE COURT: All right.

MR. HAYHOW: I think also, too, your Honor, there is an immigration detainer on this case. He has young children. Ten years is a long time and the shorter time that he can be legally given at least gives him some opportunity in the future, especially if he gets some time off for good behavior, to reestablish his relationship with his children and with the rest of his family, and perhaps go on and lead the rest of his life without coming back to this Court.

THE COURT: All right. Thank you. I'll hear from the Government. Mr. Vilker?

MR. VILKER: Your Honor, the Government does agree that a sentence at the bottom of the range, in this case 121 months, is more than sufficient to penalize the Defendant in this case.

The downward departure, because of the ten-year mandatory minimum, is essentially about one month. In some ways the Government feels petty arguing that that one-month departure shouldn't be granted, but for reasons of principle we believe both grounds sought for their departure are just flatly wrong under the law.

In terms of the family circumstances, basically, the Defendant has evidently a very

caring and loving wife who is taking care of their daughter. Unfortunately, they're the ones that are really injured in this, and that's typical in all criminal cases, and does not separate this case from the overwhelming heartland of cases.

The recent First Circuit cases dealing with children basically hold that where there is an alternative to care for the child, then that case is not taken out of the heartland and here there clearly is.

In terms of the Defendant's role in this offense, the Defendant to receive a minor role must make a showing that he was substantially less culpable than the other persons involved in the offense and less culpable than most other persons convicted of comparable crimes.

In this case, as outlined in the presentence report, the Defendant played a very significant role. He attended all the meetings with the undercover agents except one in which he was present outside. He participated in the ultimate transaction. He said that he was -- there was a $136,000. He inspected and examined the cocaine. He complained about its quality. Bottom line is he was an active and necessary

participant in this offense and does not meet the qualifications for a minor role reduction under the guidelines.

With all that being said, the Government does believe a sentence at the bottom of the range is appropriate in this case and recommends 121-month sentence.

THE COURT: Mr. Leon, do you have anything to say to the Court before the Court imposes sentence?

THE DEFENDANT: Yes. With all due respect to your Honor, I would like to say that from the time I was a child I was taught that all humans have the possibility of making mistakes. I know that that is true. But now I realize the magnitude of my mistake and how this situation has affected my family and my children.

All my efforts are now directed to changing the consequences of this episode in my life. I am in the process of giving myself over to the Lord so that the Lord will clean my heart and will set my life on the right path. I'm hoping that he will not take into account all the suffering that I have caused all the people that I love. I am very, very sorry for the problems I

have caused them with my behavior. And at the present time, I am making a very conscious effort to fix my life, to set my life straight and to reestablish my relationship with my children. I apologize to the Court and to all the people present here. Thank you.

THE COURT: All right. You may be seated. This case is typical of many that I see, an immigrant to this country who then gets involved with drugs, drug trafficking, drug distribution. And the ultimate penalty is deportation and never again an opportunity to come to this country.

The Defendant didn't learn his lesson. He was convicted in New York and he got a big break, five years of probation. And that should have told him that he'd gotten a big break, and he should stay away from this kind of activity. But no, within some months, he's involved in this transaction. And this was not minor transaction. This was four people coming from New York to buy 30 kilograms of cocaine and bringing with them $135,000 in a bag in cash. This is big time activity.

And the Defendant's function in that activity was essentially to be a transporter along

with Payero and also to pick up the drugs and make a decision as to the quality of the drugs.

And he attended all these meetings that took place and so he was an integral part of this conspiracy to buy these drugs in Rhode Island and transport them to New York.

It's ironic that usually the transportation of drugs is the other way. It's from New York to Rhode Island. But this young man didn't learn his lesson on his first conviction. He's learning a bitter lesson today.

The fact that he has family obligations does not take this case out of the heartland, and this is not a downward departure case. In any event, downward departure is academic. The biggest downward departure I could give him was one month, because there's a mandatory minimum sentence of ten years in these cases.

I will tell you that in cases where the Defendant is in a similar situation and will be deported I think a satisfactory sentence is usually in the area of three to four years. And when I can do so, that's the kind of sentence I impose. But here I'm bound, Congress has said ten years is the minimum sentence in these cases.

So I deny the motion for downward departure, but I will impose a sentence at the bottom of the guideline range because this is such a long sentence.

The sentence on Counts I and II will be 121 months of incarceration to be served concurrently. And also, after his sentence is served, he'll be on five years of supervised release on each count to be served concurrently. And one of the conditions of supervised release is that he be deported. I have to use the language of the First Circuit, quote, "Upon completion of the term of imprisonment, the Defendant is to be surrendered to a duly authorized immigration official for deportation in accordance with the established procedures provided by the Immigration and Naturalization Act, Title 8, United States Code, Section 1101, et seq, and Title, 18 United States Code, Section 3583(d). Further, if deported, the Defendant shall remain outside the United States."

I will not impose restitution or a fine, but I must impose a special assessment of $100 on each count of conviction for a total of $200.

Since I have denied the Defendant's motion

22

for downward departure, technically, he has a right to appeal, and I notify him of that right. And if he can't afford an appeal, he can apply to the Court to appeal informa pauperis, but it' hardly seems worthwhile to try to appeal to get one month less when we're dealing with this area of incarceration. Are there any questions?

MR. VILKER: No, your Honor. Thank you.

MR. HAYHOW: Nothing, your Honor.

THE COURT: The clerk will draft the judgment of conviction. All right. We'll take a recess.

(Court concluded at 10:20 a.m.)

# C E R T I F I C A T I O N

I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Anne M. Clayton

Anne M. Clayton, RPR

Nov. 29, 2004

Date